IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES | ) | |
| --- | --- | --- |
| | ) | CR No. 10-233 |
| v. | ) | |
| DEWAYNE JOSEPH | | |

**OPINION AND ORDER**

**SYNOPSIS**

In this matter, Defendant pleaded guilty to violations of 21 U.S.C. § 846 and § 924. On February 18, 2012, he was sentenced to a term of imprisonment of 200 months. His plea agreement included a waiver of collateral attack. Presently before the Court is Defendant's counseled Motion pursuant to 28 U.S.C.§ 2255. Defendant contends that his waiver was invalid because it was unknowing, and that its enforcement would result in a miscarriage of justice.[1]

**OPINION**

**I. APPLICABLE STANDARDS**

  **A. 28 U.S.C. § 2255**

Relief is available under Section 2255 only under exceptional circumstances, when the claimed errors of law are "a fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428, 82 S. Ct. 468, 7 L. Ed. 2d 417 (1962).

---

[1] I do not reach Defendant's argument that the waiver is invalid because the Government breached the plea agreement. The parties briefed that issue to the Court of Appeals, which declined to accept Defendant's position, and instead granted the Government's Motion to enforce the appellate waiver contained in the agreement. Likewise, because I dispose of this matter on waiver grounds, I do not address in full the substance of Defendant's remaining claims that counsel was constitutionally ineffective. I did, however, consider those claims under Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). While I find that counsel was not constitutionally ineffective in the manner alleged, it is also clear that Defendant cannot demonstrate the type of prejudice required by applicable standards.

1

A district court need not hold an evidentiary hearing on a Section 2255 motion if the motion, files, and records show conclusively that the defendant is not entitled to relief. United States v.Ritter, 93 Fed. Appx. 402 (3d Cir. 2004). Under these standards, a hearing is unnecessary in this case, and the Motion will be disposed of on the record.

II. WAIVER

    A. ENFORCEABILITY OF COLLATERAL ATTACK WAIVERS GENERALLY

I first address Defendant's general argument that a waiver of collateral attack rights in a plea agreement should not be enforced. Defendant suggests that no criminal defendant can ever properly waive the right to collateral attack, because it involves waiving unknown, future rights or errors – such as those violated or made by counsel or the Court during sentencing. Defendant also points out that his waiver of the right to collateral attack was unequivocal and limitless, as opposed to his waiver of the right to appeal, which he retained the right to invoke under certain circumstances.[2] In support of his argument, Defendant invokes the recent NACDL Ethics Advisory Committee Formal Opinion 12-02 (Oct. 2012), which opined that waivers of ineffective assistance claims in a plea agreement present ethical problems for defense counsel and prosecutors alike. See also PBA Legal Ethics and Professional Responsibility Committee Formal Opinion 2014-100.

Generally, in this Circuit, waivers of the right to collateral attack are valid if entered into knowingly and voluntarily, and will divest the district court of jurisdiction over a collateral attack. United States v. Khattak, 273 F.3d 557, 558 (3d Cir. 2001); United States v. Goodson, 544 F.3d 529, 536 (3d Cir. 2008). Although the attorney ethics surrounding such waivers have recently been called into question, our Court of Appeals has since affirmed their enforceability of

---

[2] For example, in Defendant's plea agreement, Defendant retained the right to direct appeal if the Government were to appeal from the sentence, or if the sentence exceeded statutory limits or guideline ranges.

as a legal matter. E.g., Muller v. Sauers, 523 Fed. Appx. 110, 111-12 (3d Cir. 2013). Khattak, which rejected an argument similar to that which Defendant now advances, remains in force in this Circuit generally, and in the collateral attack context specifically. See, e.g., United States v. Murray, 483 Fed. Appx. 690 (3d Cir. 2012). As the above-referenced Ethics Opinion acknowledges, the Advisory Committee's position is "aside from whether the courts might approve such waivers." Ethics Advisory Opinions are not binding on federal courts. Although our Court of Appeals may someday declare collateral attack waivers per se invalid in light of the ethical dilemmas they present, it has not done so to date. Cf. United States v. Grimes, 739 F. 3d 125 (3d Cir. 2014). Absent guidance from our appellate court, I am unwilling to arrive at such a rule.

### B. ENFORCEABILITY OF DEFENDANT'S WAIVER

I next address Defendant's contention that his particular waiver is invalid due to ineffective assistance of counsel. Defendant contends that counsel advised him that he would receive a ten year sentence if he accepted the plea; and that he was not informed by counsel that he could accept responsibility for his involvement in a conspiracy, but still challenge the weight assigned thereto.

Claims challenging the voluntariness of a collateral attack waiver, or the effectiveness of counsel with respect to the waiver itself, may survive the waiver. United States v. Whitaker, No. 02-90-03, 2005 U.S. Dist. LEXIS 23884, at **5-6 (E.D. Pa. Oct. 18, 2005). Similarly, courts will consider an ineffectiveness claim that relates directly to the negotiation of the waiver itself. United States v. Fagan, No. 04-2176, 2004 U.S. Dist. LEXIS 22456, at **9-11 (E.D. Pa. Oct. 4, 2004). In this context, however, it is important to note Supreme Court's observation that "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any

3

findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977).

Here, Defendant's plea letter contained the following language: "Dewayne J Joseph…waives the right to file a motion to vacate sentence, under 28 U.S.C. 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence." Defendant and his counsel both signed the letter, and the waiver portion of the letter was read into the record at Defendant's plea hearing. During Defendant's plea colloquy, the Court asked Defendant whether he heard and understood counsel when she read the plea letter into the record. The Court further asked Defendant whether he understood that he had given up the "right to file a motion to vacate [his] sentence under federal law and the right to file any other collateral proceeding attacking [his] conviction or sentence." When asked if he heard and understood this, Defendant replied in the affirmative. At no time during the proceeding did Defendant indicate in any way that he misunderstood or was misadvised about the waiver, or any part of the plea agreement, or was in any way coerced into the plea.

Moreover, the plea colloquy belies Defendant's claim that counsel caused him to misunderstand the ramifications of his plea. Counsel for the Government read the terms of the plea agreement into the record, including that "Mr. Joseph and the US Attorney further agree to the following: The penalty that may be imposed upon him is a term of imprisonment of not less than ten years and to a maximum of life…." Upon being asked whether he heard and understood these terms, Defendant replied in the affirmative. He was further asked whether anyone made any promises to him, other than those contained in the plea agreement, that forced him to plead guilty. He replied, "No, ma'am." Subsequently, the following exchange occurred:

> Court: Under the Sentencing Reform Act….The United States Sentencing Commission issued guidelines for judges to follow in determining sentences in criminal cases….The United States Supreme Court has ruled that these guidelines are advisory only. Have you and your attorney talked about how the advisory sentencing guidelines might apply to your case:
>
> Defendant: Yes.
>
> Court: Do you understand that I will not be able to determine what advisory guideline sentence range applies to your case until after a presentence report has been completed and you and the Government have had the opportunity review the report and perhaps challenge any facts or calculations in it?
>
> Defendant: Yes.
>
> Court: Do you understand after it has been determined what advisory guideline sentencing range applies to a case I have the authority to impose a sentence either more severe of less severe than that called for by the advisory sentencing guidelines?
>
> Defendant: Yes, ma'am.

In other words, the colloquy clearly identified the maximum sentence, as well as the Court's discretion regarding Defendant's sentence. Such a colloquy has been held sufficient to dispel any alleged misrepresentations by counsel regarding sentencing calculations. E.g., United States v. Delbridge, 504 Fed. Appx. 145, 151-52 (3d Cir. 2012); United States v. Shedrick, 493 F. 3d 292, 299 (3d Cir. 2007); Bailey v. United States, No. 6-17, 2010 U.S. Dist. LEXIS 122964, at **7-8 (W.D. Pa. Nov. 19, 2010). Our Court of Appeals has "long held that an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where…an adequate plea hearing was conducted." Delbridge, 504 Fed. Appx. at 151. Thus, such circumstances do not meet the ineffective assistance standards enunciated in Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Shedrick, 493 F. 3d at 299.

I must, however, also look to whether enforcing the waiver would work a miscarriage of justice. In so doing, I am to consider "[t]he clarity of the error, its gravity, its character (e.g.,

5

whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result." United States v. Mabry, 536 F. 3d 231, 242 (3d Cir. 2008) (quoting United States v. Teeter, 257 F. 3d 14, 25-26 (1st Cir. 2001)). Courts are to apply the miscarriage of justice exception "sparingly and without undue generosity." United States v. Wilson, 429 F.3d 455, 458 (3d Cir. 2005) (quoting United States v. Teeter, 257 F.3d 14, 26 (1st Cir. 2001)). Considering these factors, and all of the attendant circumstances, I find that enforcing the waiver does not work a miscarriage of justice. For example, the alleged error is not clear, Defendant acquiesced entirely in the result and did so on the record, it does not relate to the validity of the underlying conviction for the crime charged, and invalidating the plea would have a significant impact on the Government.

### III. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C.§ 2253(c)(2), a "certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right." For the reasons stated above, Defendant has not made such a showing. Therefore, a certificate of appealability will not issue.

## CONCLUSION

In sum, Defendant has waived his right to collateral attack, and his Motion must be denied. No certificate of appealability shall issue. An appropriate Order follows.

**ORDER**

AND NOW, this 15th day of May, 2014, it is hereby ORDERED, ADJUDGED, and DECREED that Defendant's Motion to Vacate [806] is DENIED. No certificate of appealability shall issue.

BY THE COURT:


/s/Donetta W. Ambrose

Donetta W. Ambrose, Senior Judge

U.S. District Court